IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMMEL BARAO,<br><br>　　　　　Petitioner,<br><br>　　vs.<br><br>SCOTT FRAUENHEIM, Warden, Pleasant Valley State Prison,<br><br>　　　　　Respondent. | No. 2:15-cv-00098-JKS<br><br>MEMORANDUM DECISION |

　　　　Rammel Barao, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Barao is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Pleasant Valley State Prison.  Respondent has answered, and Barao has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

　　　　On June 19, 2009, Barao and his co-defendant, Vandell Johnson, Jr., were jointly charged with the murder of Juan Carlos Lorenzo (count 1) and the robbery of Lorenzo and Lorenzo's companion, Domingo Moyotl (counts 2 and 3).  The information also alleged that Barao committed the murder during the commission of a robbery and intentionally and personally discharged a firearm causing great bodily injury.  With regards to counts 2 and 3, the information again alleged that Barao intentionally and personally used and discharged a firearm causing great bodily injury.  Barao was separately charged in count 4 with possession of a firearm by an ex-felon and in count 5 with unlawful possession of ammunition.  It was further alleged that Barao had been previously convicted of two serious felonies and had served a prior separate term in state prison.  Barao entered not guilty pleas to the charges and denied the enhancements.  On

direct appeal of his conviction, the California Court of Appeal described the following events underlying the charges against Barao:

> During the evening of February 28, 2009, [Barao] and codefendant Vandell Johnson, Jr., accompanied by their girlfriends, walked from [Barao's] apartment to a pool hall to play pool. Also present at the pool hall were Lorenzo and Moyotl. Although Moyotl understood only a little English, the two groups struck up a conversation. Eventually the four men went into the parking lot and began discussing drugs. Moyotl heard someone say "cocaine," but he did not understand much more of the conversation.
> After speaking for a short time, the four men got into Lorenzo's car—Moyotl in the driver's seat, Lorenzo in the passenger seat, and [Barao] and codefendant Johnson in the backseat. [Barao] and Johnson tried to give Moyotl directions, but Moyotl had difficulty understanding, so Lorenzo took over the driving. [Barao] or Johnson directed Lorenzo to a parking lot.
> According to Moyotl, Johnson got out of the car and walked toward the street, but then he returned and stood by the driver's door. Moyotl saw [Barao] get out of the car, take a gun from his waistband and put it up his sleeve. As [Barao] and Johnson were speaking with Lorenzo on the driver's side, Moyotl said to Lorenzo, "Let's go, let's go now." However, Lorenzo continued talking and then [Barao] shot Lorenzo in the head. Lorenzo's car rolled about 25 feet, hit a fence, and stopped.
> [Barao] immediately walked away from the area, but Johnson went to the passenger side of the car and demanded money from Moyotl. Moyotl gave Johnson his wallet, and Johnson gestured for Moyotl to get out of the car and leave. Moyotl walked away but looked back and saw Johnson get into the front passenger seat of Lorenzo's car. As Moyotl walked, he called the police, who met him at a laundromat about two blocks away.
> Police officers who responded to the laundromat spoke with Moyotl, with whom they had difficulty communicating. Eventually, the officers learned of the shooting and found Lorenzo's car in the parking lot with Lorenzo still in it. Lorenzo's car stereo, which had been in the dashboard prior to the shooting, was missing and the connecting wires were hanging from the center console. Lorenzo was still alive and was transported to a hospital, but he died a few days later. The cause of death was a single gunshot wound to the head.
>
> *Defense*
>
> [Barao] did not testify or present any evidence. Johnson, however, testified on his own behalf. He confirmed meeting Lorenzo and Moyotl at the pool hall. Johnson claimed it was Lorenzo who was selling drugs and that he, who also sold drugs, intended to buy drugs from Lorenzo. Lorenzo set up the buy and drove them to the parking lot where the drugs were to be delivered.
> Fearing that he and [Barao] were being set up, Johnson got out of Lorenzo's car and walked away. However, he heard Lorenzo speaking loudly to [Barao], so he walked

2

back to the car.  While Johnson and [Barao] were talking with Lorenzo, [Barao] suddenly pulled out a gun, which Johnson did not know [Barao] possessed.  Lorenzo reached out of the driver's side window for the gun, Johnson heard the car's engine rev, and [Barao] then shot Lorenzo.  Johnson fled because he was scared.

Johnson denied robbing or intending to rob either Lorenzo or Moyotl.  When he later asked [Barao] what happened, [Barao] said that "the guy tried to run him over and then a shot went off."

*People v. Barao*, 160 Cal. Rptr. 3d 506, 508-09 (Cal. Ct. App. 2013).

Barao attempted to negotiate a plea deal with the prosecution.  The Court of Appeal also described the following facts underlying those negotiations:

Prior to trial, the prosecutor sought leave to amend the information by charging voluntary manslaughter instead of murder in count 1.  The prosecutor explained she sought leave to amend in order to facilitate a proposed plea bargain, which she also sought to be approved at the same time.  Under the plea bargain, [Barao] would plead guilty to voluntary manslaughter and two counts of robbery, would admit one of his prior strikes, would admit to use of a gun, and would admit his prior prison term.  He would receive a prison term of 41 years.

The prosecutor and defense counsel believed the proposed plea more correctly conformed to the evidence.  The trial judge disagreed with that assertion, having been the judge that conducted [Barao's] preliminary hearing.  The prosecutor explained that based on the evidence, it was possible the jury would convict of voluntary manslaughter instead of murder.  She believed there was a potential the jury could conclude [Barao] did not intend to rob Lorenzo and Moyotl, and that the gun discharged accidentally when Lorenzo reached out of the car towards [Barao].

The court took the motions to amend and approve the plea bargain under submission.  It was "not prepared to grant the motions at this point based on the facts and circumstances as the Court heard them at the preliminary hearing."

Subsequently, [Barao] filed a motion to join the prosecution's motion to amend. He asserted that under [California Penal Code] section 1009,[1] the statute that allows

---

[1] That section provides:

An indictment, accusation or information may be amended by the district attorney, and an amended complaint may be filed by the prosecuting attorney, without leave of court at any time before the defendant pleads or a demurrer to the original pleading is sustained.  The court in which an action is pending may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings, or if the defect in an indictment or information be one that cannot be remedied by amendment, may

3

amendment of a criminal pleading, amending the information by charging voluntary manslaughter instead of murder was appropriate because sufficient evidence introduced at the preliminary hearing supported the voluntary manslaughter charge.

Ultimately, the court refused to approve the plea bargain and it denied the motion to amend. The court disapproved the plea bargain based on the evidence presented to it at the preliminary hearing. It also concluded [Penal Code] section 1192.7 prohibited plea bargaining in this case, and that none of the exceptions to that rule applied.

The court also denied the motion to amend the information. Section 1009[2] vested the court with discretion to grant or deny a proposed amendment to an information, and the court exercised that discretion and denied the amendment, again based on the evidence presented at the preliminary hearing.

The prosecutor and [Barao] sought the court's approval of the plea bargain and information amendment on three additional occasions; once in pretrial, once during in limine motions, and once during trial. Each time, the trial court denied the motion.

---

order the case submitted to the same or another grand jury, or a new information to be filed. The defendant shall be required to plead to such amendment or amended pleading forthwith, or, at the time fixed for pleading, if the defendant has not yet pleaded and the trial or other proceeding shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted. An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination. A complaint cannot be amended to charge an offense not attempted to be charged by the original complaint, except that separate counts may be added which might properly have been joined in the original complaint. The amended complaint must be verified but may be verified by some person other than the one who made oath to the original complaint.

CAL. PENAL CODE § 1009.

2      The relevant portion of that section states:

Plea bargaining in any case in which the indictment or information charges any serious felony, any felony in which it is alleged that a firearm was personally used by the defendant, or any offense of driving while under the influence of alcohol, drugs, narcotics, or any other intoxicating substance, or any combination thereof, is prohibited, unless there is insufficient evidence to prove the people's case, or testimony of a material witness cannot be obtained, or a reduction or dismissal would not result in a substantial change in sentence.

CAL. PENAL CODE § 1192.7(a)(2).

*Id.* at 509-10 (footnote omitted).

On July 19, 2010, Barao and Johnson proceeded to a joint jury trial. On September 3, 2010, the jury found Barao guilty of second-degree murder (count 1) and found true the firearm enhancements attached to that charge. Barao was also convicted on the possession charges (counts 4 and 5), but acquitted of the robbery charges (counts 2 and 3).[3] After waiving his right to a jury trial on the prior conviction allegations, the court found true the prior convictions as well as the prior prison term enhancement. Barao was subsequently sentenced to serve an aggregate term of 75 years to life imprisonment.

Through counsel, Barao appealed his conviction, arguing that the trial court: 1) abused its discretion when it denied the prosecution's motion to amend the information and declined to accept the proposed plea bargain; and 2) erroneously refused to instruct the jury on involuntary manslaughter. On August 5, 2013, the California Court of Appeal issued a partially-published, reasoned opinion rejecting Barao's claims and affirming his judgment in its entirety. *Barao*, 160 Cal. Rptr. 3d at 511. Barao petitioned the California Supreme Court for review, which was summarily denied on September 16, 2013. Barao's conviction became final on direct review 90 days later, when his time to file a petition for *certiorari* in the Supreme Court expired on December 16, 2013. *See Jiminez v. Quarterman*, 555 U.S. 113, 119 (2009); *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

Barao timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on December 10, 2014.

---

[3] Co-defendant Johnson was found guilty on the robbery charges (counts 2 and 3) but acquitted on the murder charge.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Barao raises the two grounds for relief he unsuccessfully brought before the state courts. First, he argues that the trial court erred when it refused to accept the proposed plea bargain and denied the prosecution's motion to amend the information. He additionally contends that the trial court improperly declined to instruct the jury on involuntary manslaughter.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

6

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Here, the only decision on Simmons' collateral review claims was a summary denial by the California Supreme Court on habeas review, which is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

Ground One:          Rejection of Plea Deal

Barao first argues that the trial court erred when it refused to allow the prosecution to amend the information and rejected the proposed plea deal.  The Court of Appeal considered and denied this claim on direct appeal as follows:

> [Barao] contends the trial court abused its discretion and violated the constitutional doctrine of separation of powers when it refused to accept the plea bargain and denied the prosecution's motion to amend the information.  He claims the prosecutor had determined the evidence was insufficient to prosecute a charge of murder, and the court should have honored that decision.  He asserts the plea bargain was not barred by section 1192.7's prohibition of plea bargaining in serious felony cases.  He also argues the proposed amendment to the information did not violate any of [Barao's] substantive rights, and the court denied the amendment based on an improper factor, the disparity in sentencing.  We conclude the court did not abuse its discretion in denying the plea bargain and the motion to amend.
> . . . .
> This case was prohibited by section 1192.7 from being resolved by plea bargain.  That statute, adopted as part of Proposition 8, prohibits plea bargaining in any case in which the information charges a serious felony unless certain exceptions are met.  Three of the charges alleged against [Barao] qualified under the statute as serious felonies: murder, personal use of a firearm, and robbery.  (§ 1192.7, subds.(c)(1), (8), (19).)
> As a result, the case could not be resolved by plea bargain unless one of three exceptions was satisfied: there was "insufficient evidence to prove the people's case, or testimony of a material witness cannot be obtained, or a reduction or dismissal would not result in a substantial change in sentence." (§ 1192.7, subd. (a)(2).)  The trial court's decision not to approve the plea bargain in effect was a determination that none of these exceptions to the prohibition applied here.  The evidence supports the court's determination.
> The trial court held there was sufficient evidence to convict [Barao] of murder.  It was intimately familiar with that evidence, as it had heard [Barao's] preliminary hearing.  Indeed, in some cases, a court may need to consult a probation report and the preliminary examination transcript when deciding whether to approve a proposed plea bargain.  The prosecution's evidence showed that [Barao] exited the car, stood outside the car by the driver's side window, and then shot Lorenzo in the head without apparent provocation.  This was sufficient evidence to prove the prosecution's case.  Based upon its understanding of the evidence, the trial court was free to disagree with the prosecutor's doubts about being able to prove murder, and it did not abuse its discretion in doing so.

8

The trial court also recognized the plea bargain would result in a substantial change in [Barao's] likely sentence. In determining whether a plea bargain would result in a substantial change in the sentence, we are to compare the proposed sentence with the sentence the judge would impose without a plea bargain. The actual sentence the court imposed on [Barao] for second degree murder and his other crimes and enhancements was 75 years to life, a term of imprisonment almost twice as long as the sentence proposed under the plea bargain. The court likely recognized this substantial disparity in the sentence [Barao] would receive after trial and the one proposed under the plea bargain, and it concluded the plea bargain would result in too drastic a reduction in sentencing.

The prosecution also made no showing that the testimony of a material witness could not be obtained.

Thus, the trial court correctly concluded this case fell within section 1192.7's prohibition of plea bargaining, and it rightly refused to approve the proposed plea. The court did not abuse its discretion in doing so.

Defendant claims the court abused its discretion in denying the prosecution leave to amend the information to charge involuntary manslaughter in place of murder. He argues the court relied on an improper factor—sentencing—to deny the prosecution's motion. We disagree. The motion to amend was brought to facilitate the plea bargain, not as a separate and unrelated motion. As a result, the trial court had to review the motion as part of its analysis under section 1192.7's prohibition of plea bargaining. That statute, in turn, required the court to consider sentencing as a factor. Having concluded the plea bargain would result in a significantly more lenient sentence, and thus the case could not be resolved by plea bargain, the court was well within its discretion to deny the motion to amend as well on that same basis. Since the plea bargain was prohibited, the motion to amend effectively became moot.

Section 1192.7, subdivision (a)(2), serves an important public purpose which the courts are obligated to enforce. "Section 1192.7 was added by an initiative measure (Prop.8) approved by the people on June 8, 1982. (Stats. 1982, § 7, p. A-189.) The electorate's obvious purpose in enacting the measure was to place limitations on plea bargaining in serious felony cases. Unless trial courts require the parties to justify agreements they make in such cases, the statute's purpose may be ill-served. Prosecutors may be free to bargain away serious felony charges even when there is sufficient evidence to prove the case, testimony of material witnesses is available, and reduction or dismissal would result in a substantial change in sentence. In such cases defendants are not likely to complain, and the public may not learn of, or have any opportunity to protest, a bargain which is statutorily prohibited. Additionally, failure to make a proper record may give the prosecution an opportunity to 'pull the string' on a plea agreement any time prior to sentencing simply by asserting the violation of section 1192.7.

"There is a simple way to avoid such sticky situations. If trial courts, prosecutors, and defense counsel will recognize and respect the provisions of section 1192.7 and make a record showing that one of the statutory exceptions to the prohibition on plea bargaining applies, the electorate's purpose in enacting the statute will have been satisfied and the bargains will not be capable of being easily undone."

*Barao*, 160 Cal. Rptr. 3d at 509-11 (citations omitted).

While Barao reasserts this claim before this Court, it is not cognizable on federal habeas review. With respect to his contention that the trial court abused its discretion when it determined that the plea bargain was barred by § 1192.7's prohibition of plea bargaining in serious felony cases and denied the prosecution's proposed amendment based on an improper factor, a state court's abuse of discretion is not a valid basis for federal habeas relief.[4] Even if the trial court erroneously applied state law in following this course of action, the decision of the California Court of Appeal rejecting this state law claim is binding on this court and may not be challenged in this federal habeas corpus proceeding. *Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) ("we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions'"); *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n.21 (1982) and *Estelle*, 502 U.S. at 67, 72-73). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle*, 502 U.S. at 68; *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law,"

---

[4] Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief. Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was 'an unreasonable application of . . . clearly established Federal law.'" (quoting § 2254(d)(1))).

unless it was "sufficiently egregious to amount to a denial of equal protection or of due process of law . . . ."); 28 U.S.C. § 2254(a). Accordingly, the Court may not grant habeas relief when, as is the case here, a petitioner's claim is based on an alleged error in the interpretation or application of state law. *See Estelle*, 502 U.S. at 68; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

Barao's separation of powers argument also must fail on federal habeas review. To the extent that such claim is based on an alleged violation of the separation of powers doctrine embodied in the California Constitution, such claim fails for the same reasons set forth above. And to the extent that the claim is based on the Federal Constitution, such "claim fails for the simple reason that 'the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments.'" *Ralbovsky v. Kane*, 407 F. Supp. 2d 1142, 1159 (C.D. Cal. 2005) (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 255 (1957)); *see also Chromiak v. Field*, 406 F.2d 502, 505 (9th Cir. 1969) ("The federal constitutional doctrine of separation of judicial and executive powers applies only to the operation of the federal government and is not binding upon the states."). Accordingly, Barao is not entitled to relief on this claim.

Ground Two:            Instructional Error

Barao also alleges that trial court committed reversible error due to its failure to instruct the jury on the lesser included offense of involuntary manslaughter. Because jury instructions in state trial are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that the Supreme Court has repeatedly held that "a state court's

11

interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995). An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in

the Bill of Rights, the Due Process clause has limited operation." *Id*. Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72. Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

In this case, the jury was instructed on first and second degree murder. Barao also requested CALCRIM No. 580, which relates to involuntary manslaughter. That instruction provides:

> When a person commits an unlawful killing but does not intend to kill and does not act with conscious disregard for human life, then the crime is involuntary manslaughter.
> The difference between other homicide offenses and involuntary manslaughter depends on whether the person was aware of the risk to life that his or her actions created and consciously disregarded that risk. An unlawful killing caused by a willful act done with full knowledge and awareness that the person is endangering the life of another, and done in conscious disregard of that risk, is voluntary manslaughter or murder. An unlawful killing resulting from a willful act committed without intent to kill and without conscious disregard of the risk to human life is involuntary manslaughter.
> The defendant committed involuntary manslaughter if:
> > 1. The defendant (committed a crime that posed a high risk of death or great bodily injury because of the way in which it was committed/ [or] committed a lawful act, but acted with criminal negligence);
> > AND
> > 2. The defendant's acts unlawfully caused the death of another person.

CALCRIM No. 580.

When asked what evidence supported the requested instruction, defense counsel stated, "Well, I suppose it could be some sort of negligent discharge or brandishing or something like that may qualify." The trial court replied that "if there were some evidence that the gun went off accidentally, something of that sort, then it seems to me you're right." But the trial court indicated that it did not believe such evidence was in the record. After reviewing the witnesses' statements, the trial court declined to give the instruction because it "f[ound] no evidence to—let alone substantial evidence—to instruct this jury on involuntary manslaughter." Barao challenged that determination on direct appeal. Rather than addressing whether substantial evidence supported the charge, the Court of Appeal concluded that relief was not warranted in any event because Barao could not show that he was prejudiced by the omission, as the jury's second-degree murder finding implicitly rejected Barao's claim that the killing was done without malice, which is a required element of manslaughter.

Barao fares no better on federal habeas review. As an initial matter, Barao did not have a constitutional right to have the jury instructed on any lesser offense. "Under the law of [the Ninth Circuit], the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question." *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998); *see also Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000). Furthermore, the United States Supreme Court has never held that a trial court's failure to instruct on a lesser included offense in a non-capital case violates due process of law. Rather, the Supreme Court has held only that a defendant has a constitutional right to have the jury instructed on lesser included offenses in capital cases. *Beck v. Alabama*, 447 U.S. 625, 638 (1980). In so holding, the Supreme Court expressly declined to state whether that right extended

14

to non-capital cases. *Id.* at 638 n.14; *see also Gilmore v. Taylor*, 508 U.S. 333, 361-62 (1993) (Blackmun, J., dissenting ) (observing that *Beck* left open question of whether due process entitles criminal defendants in non-capital cases to have jury instructed on lesser included offenses).

Nevertheless, the Ninth Circuit has stated that "the refusal by a court to instruct a jury on lesser included offenses, when those offenses are consistent with defendant's theory of the case, may constitute a cognizable habeas claim" under clearly established United States Supreme Court precedent. *Solis*, 219 F.3d at 929. But Barao has not established any basis for the giving of the instruction because, as the trial court reasonably concluded, there was no substantial evidence that the killing amounted to involuntary manslaughter. *See Bradley v. Duncan*,315 F.3d 1091, 1098-1100 (9th Cir. 2002) (failure to instruct on a theory of defense may violate due process if substantial evidence was presented to support that defense). Neither of the witnesses (Johnson or Moyotl) testified that Barao was brandishing the pistol in any direction but pointed at Lorenzo, and neither testified that the car was moving in the direction of Barao when the shot was fired. Thus, the omission of the involuntary manslaughter instruction did not violate due process.

Likewise, any purported error in not giving the involuntary manslaughter instruction was harmless because there was no substantial or injurious influence on the jury's verdict. As the Court of Appeal determined, there is no reasonable basis for assuming that, had the jury been instructed on the involuntary manslaughter theory, the verdict would have been any different, given that the jury, in determining that petitioner committed second degree murder, implicitly

rejected any theory of involuntary manslaughter. *Brecht*, 507 U.S. at 623. Based on the foregoing, the Court concludes that no habeas relief is warranted on this ground.

## V. CONCLUSION AND ORDER

Barao is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: January 13, 2016.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge